# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 05-23368-CIV-MOORE/GARBER

MICHELINE FRANCOIS, ANGEL MESIGNOR,
JEANNETTE MORVANT, and SUZE BERNARD

       Plaintiffs,

vs.

WASHMONBO, INC., a Florida corporation,
d/b/a FRONT PORCH CAFÉ

       Defendant.

_____/

## <u>ORDER DENYING MOTION FOR SUMMARY JUDGMENT</u>

THIS CAUSE came before the Court upon Defendant Washmonbo, Inc. d/b/a Front

Porch Café's Motion for Summary Judgment (DE # 35).

UPON CONSIDERATION of the Motion, and the pertinent portions of the record, and

being otherwise fully advised in the premises, the Court enters the following Order.

## I.      Background

Plaintiffs, Micheline Francois, Jeannette Morvant, and Suze Bernard (collectively

"Plaintiffs"), filed this action against Defendant Washmonbo, Inc. d/b/a Front Porch Café

("Defendant"), a small but popular casual dining café on Ocean Drive in South Beach, bringing

claims of sexual harassment under Title VII and the Florida Human Rights Act, Chapter 760,

F.S.  Def. Mot. at 1–2.  Plaintiffs claim that while they worked for Defendant, they were subject

to a sexually hostile work environment.  Id. at 2.  Plaintiffs further challenge the adequacy of

Defendant's efforts to stop the alleged sexual harassment.  Id.

In mid to late November 2003, Plaintiffs filed charges of discrimination with the Equal

Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations

("FCHR") alleging sexual harassment and national origin discrimination.  Id. at 3, Ex. Tab G.
Plaintiffs Francois and Morvant reported the latest date of discrimination as November 14, 2003.
Id.  Plaintiff Bernard, who resigned on August 31, 2003, listed an earlier date of latest
discrimination.  Id.  Plaintiffs Francois and Morvant checked the box on the charge of
discrimination form to note that the violations were continuing in nature.  Id.  The EEOC
conducted an investigation and concluded that there was reasonable cause for Plaintiffs' charges.
Id.  Plaintiffs received Notices of Right to Sue dated September 29, 2005 and filed their
complaint in this Court at the end of December 2005.  Id. at 3–4.

Defendant filed this Motion for Summary Judgment, arguing that they should be granted
summary judgment because (1) Plaintiffs' claims are time-barred because they have not shown a
pattern of continuing sexual harassment violations, and/or (2) Plaintiffs do not satisfy the test to
establish a sexually hostile work environment.  Plaintiffs counter that Defendant has taken
portions of the deposition testimony out of context and dispute Defendant's contentions.
Further, Plaintiffs assert that sexual harassment violations were pervasive and of a continuing
nature, and that each of the elements of establishing a sexually hostile work environment are
clear from the Plaintiffs' factual assertions.

## II.      Standard of Review

The applicable standard for reviewing a summary judgment motion is unambiguously
stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings,
>
> depositions, answers to interrogatories, and admissions on file, together
>
> with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a

matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact.

Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of

meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An

issue of fact is "material" if it is a legal element of the claim under the applicable substantive law

which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th

Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find

for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual

inferences therefrom in the light most favorable to the party opposing the motion. Id. However,

the nonmoving party:

may not rest upon the mere allegations or denials of the adverse party's

pleading, but the adverse party's response, by affidavits or as otherwise

provided in this rule, must set forth specific facts showing that there is a

genuine issue for trial.

Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the

[nonmovant's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

(1986).

## III.    Discussion

### A.    Timeliness

A hostile work environment, although comprised of a series of separate acts, constitutes

3

one "unlawful employment practice," and "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003). In Florida, an aggrieved person has 300 days to file a charge of discrimination under Title VII and 365 days to file a Chapter 760 claim. EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265 (11th Cir. 2002); Woodham v. Blue Cross and Blue Shield of Florida, Inc., So. 2d 891, 894 (Fla. 2002) (citing Fla. Stat. §760.01(2) (1999)). Thus, in accordance with Morgan and Watson, the Court need only determine (1) whether an act of harassment falls within 300 or 365 days prior to Plaintiffs' filing their charges of discrimination, and (2) whether that act is part of the same unlawful employment practice or contributes to the same hostile work environment.

Defendant attempts to apply the more restrictive "continuing violation" analysis to the timeliness of the charges of discrimination filed in this case. Def. Mot. at 5–11. However, "the Supreme Court rejected the **continuing violation** doctrine in hostile work environment cases . . . [and] simplified the limitations inquiry." Watson, 324 F.3d at 1258 (emphasis in original).

### 1. Plaintiff Micheline Francois

Plaintiff Francois signed her charge of discrimination on November 26, 2003 and, based on the filing stamp, her charge of discrimination was filed with the EEOC on November 28, 2003. Def. Mot. Ex. 29. Tab G. Thus, if any act of harassment, part of the same hostile work environment, occurred on or after February 1, 2003, then the charge of discrimination was timely filed. In her deposition, Francois claimed that line cook, Alex Lopez, tried to bear hug her every day soon after he was hired and tried to kiss her once or twice. Francois Depo. at 81; Def. Mot. at 8. Alex Lopez was hired on May 1, 2003. Def. Mot. Ex. 5, Employee Hire Dates. Francois

said that Alex Lopez would frequently touch and squeeze her and other women working for Defendant.  Francois Depo. at 81–94.  Francois described the bear hugging as Alex coming up behind her and pressing the front of his body to her back.  Id. at 81.  She indicated that this was similar to the type of touching that another employee, Jimmy Castro, did.  Id. at 83.  She further indicated that Alex Lopez would put his hands on top of her ribs under the breast.  Id. at 88.  The Complaint indicates that when male employees would hug or squeeze their front to Francois' backside, sometimes it involved male employees "press[ing] themselves closely to FRANCOIS' body and against her butt/buttocks, causing their penis to be hard and erect."  1st Am. Compl. at 4.  Either way, a rational person could find that the touching and squeezing described was part of a sexually hostile work environment.

Defendant argues that the various incidents described in Francois' deposition are not part of a continuing pattern because some of the incidents are separated by 6–7 months or a year.  Def. Mot. at 7–8.  However, this is more of a "continuing violation" argument and as noted above, "the Supreme Court rejected the **continuing violation** doctrine in hostile work environment cases."  Watson, 324 F.3d at 1258 (emphasis in original).  Further, in Morgan, the Supreme Court held that if "[a]cts contribute to a hostile environment on days 1–100 and on day 401 . . . it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole."  Morgan, 536 U.S. at 119.  The Court is satisfied that the acts described in Francois' deposition can be considered part of the same hostile work environment regardless of any gap in time between incidents.

As discussed above, Francois alleges that incidents of harassment occurred within the 300 days before filing her charge of discrimination.  Also, it appears that this type of sexual bear hugging and touching began much earlier with employee Jimmy Castro.  Francois Depo. at

49–73; Def. Mot. at 7.  The sexual harassment described in deposition and alleged in the

Complaint, if proven, would be part of the same hostile work environment or unlawful

employment practice.  Therefore, the Court holds that Plaintiff Francois's sexual harassment

claims are not time-barred.

### 2.  Plaintiff Suze Bernard

Plaintiff Bernard signed her charge of discrimination on November 15, 2003.  Def. Mot.

Ex. 29. Tab G.  Thus, if any act of harassment, part of the same hostile work environment,

occurred on or after January 19, 2003, then the charge of discrimination was timely filed.  In her

deposition, Bernard asserted that after Alex Lopez started working as a line cook he started bear

hugging her from behind, and while doing this he would sometimes grab her breasts or grind/rub

his genitals into her back.  Bernard Depo. at 117–23, 155–56.  Defendant admits that Alex Lopez

started training as a line cook in May, 2003.  Def. Mot. at 9.  Further, Bernard asserted in her

deposition that Alex Lopez and Jimmy Castro would do this same type of grabbing of her breasts

and rubbing their genitals against her backside "every day" during her last month working there.[1]

Bernard Depo. at 155–56.  Defendant indicates that Bernard quit on August 13, 2003.  Def. Mot.

at 9.  The Court finds that Bernard has sufficiently alleged incidents of sexual harassment

occurring within 300 days of filing her charge of discrimination and that they appear to be part

of the same hostile work environment.

### 3.  Plaintiff Jeannette Morvant

Plaintiff Morvant signed her charge of discrimination on November 18, 2003.  Def. Mot.

---

[1]Defendant attempts to call this testimony into question by saying the conduct could not have happened "every day" because these employees did not always work the same days or only overlapped for a few hours.  Def. Mot. at 9–10.  But the conduct could have happened in less than an hour of overlapping shifts, and the "every day" does not have necessarily have mean every single day, seven days a week; rather, it could mean every day *that they worked together*, or it could be another way of saying it happened *frequently*.  This is not beyond a reasonable interpretation.

Ex. Tab G.  Thus, if any act of harassment, part of the same hostile work environment, occurred

on or after January 22, 2003, then the charge of discrimination was timely filed.  Plaintiff

attempts to construe Morvant's deposition testimony as saying that all harassment from all

employees stopped in 2002, so that she could not have timely filed a charge of discrimination.

Def. Mot. at 5–6.  However, the portion of the deposition that they rely on really says that at

"[t]he **beginning of 2003**, all of this ended."  Francois Depo. at 102–03 (emphasis added).  This

testimony could be construed by a reasonable person to say that incidents of sexual harassment

occurred after the January 22, 2003 cutoff.  Further, Plaintiffs claim that the Defendant

"misquotes" Morvant, and "takes deposition testimony out of context when it argues that sexual

harassment had ended in 2002."  Pl. Resp. at 16.  Plaintiffs indicate that Morvant meant that

harassment by a particular employee stopped then.  Id.  Also, Morvant testified that it was after

she went to the EEOC with her charge of discrimination, that the male employees started to give

them "a break," stopped talking to the Plaintiffs, and "said that they were not supposed to touch

us anymore or anything like that."  Morvant Depo. at 97–98.  Either way, it is clear that the

parties dispute the facts surrounding when the harassment stopped and the Court does not need

to determine a dispute of facts in a summary judgment motion.  Also, the incidents described in

Morvant's deposition appear to part of the same hostile work environment.  The Court holds that

Defendant has not shown that Morvant's claims are time-barred.

###    B.    Sexually Hostile Work Environment

To establish a hostile work environment sexual harassment claim, an employee must

show (1) that she belongs to a protected group; (2) that the employee has been subject to

unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other

conduct of a sexual nature; (3) that the harassment must have been based on the sex of the

employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.  Olson v. Lowe's Home Centers, Inc., 130 Fed. Appx. 380, 387–88 (11th Cir. 2005) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245–46 (11th Cir.1999).

Defendant does not appear to dispute for purposes of this Motion for Summary Judgment that Plaintiffs have sufficiently shown (1), (2), and (5) above.  However, Defendant does dispute that Plaintiffs have shown (3) and (4).  Specifically, Defendant claims that many of the acts complained of were not based on the gender of Plaintiffs and argues that the acts against Plaintiffs were not severe or pervasive.  Defendant argues that the alleged acts are not subjectively or objectively offensive, did not interfere with Plaintiffs' ability to work, and that the allegations are not specific enough to have established a hostile work environment.

Defendant argues that because one employee, Manoel Costa, is openly homosexual, that the things he said and did to Plaintiffs were not based on their gender.  Costa allegedly grabbed Plaintiffs from behind on many different occasions and would tell them to "dame la lengua" or "give me your tongue."  Def. Mot. at 13; Bernard Depo. at 85.  Also, Costa made sexually suggestive motions with zucchini toward Morvant's pubic area.  Morvant Depo. at 85–87.  Costa also brought in a key chain with figures of a man an woman having intercourse and brought in toy pigs having intercourse.  Bernard Depo. at 86–87.  Defendant says that the sex toys that Costa would bring in were shown to all the employees, not just to employees of a specific gender.  Def. Mot. at 13.  Nonetheless, Plaintiffs assert that being grabbed by Costa disturbed them and Defendant does not argue that Costa grabbed the male employees in the same way.  It is not impossible for a homosexual or bisexual male to single out and harass female employees.

8

Defendant can argue Costa's motivation and actions to a jury, but this is an issue of fact that could be resolved in favor of Plaintiffs.

Defendant refers to several other "jokes" and incidents that Defendant claims were not based on gender; rather, they were committed by equal opportunity pranksters.  However, Defendant does not argue that none of the acts alleged by Plaintiffs were gender specific; rather, Defendant argues only that "many of the acts," were not gender specific.  Def. Mot. at 13.  The Court declines to go through each and every incident to determine motivation and whether they were gender related.  This would be better done by a jury.

Defendant argues that the acts against Morvant and Francois were not severe or pervasive.  "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." Olson, 130 Fed. Appx. at 387–88.  As to the subjective component, the employee must "subjectively perceive" the harassing behavior as being sufficiently severe or pervasive to alter the terms or conditions of her employment.  Id.  "As to the objective component, '[t]he [work] environment must be one that a reasonable person would find hostile or abusive[, ... which] should be judged from the perspective of a reasonable person in plaintiff's position considering all of the circumstances.'"  Id.  The four factors in making this determination are: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  Id.  In addition, "courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive."  Id.

Defendant argues the fact that Plaintiffs continued working for Defendant and returned to

work after a few leaves of absence belies that the workplace was subjectively perceived by the Plaintiffs to hostile.  Def. Mot. at 16.  This argument assumes Plaintiffs could quickly and easily have found other employment in a non-hostile atmosphere if they really believed the environment was too hostile.  However, there are possible reasons why Plaintiffs might have considered it difficult to obtain an alternative job and why Plaintiffs might have needed money badly enough to stay in a bad situation.  Defendant asks, "[i]f Bernard held an honest belief the workplace was hostile, why would she have returned to work three times?"  Def. Mot. at 16. This question is a question of fact and indicates that summary judgment is not appropriate. Further, Francois testified that at one time she was so upset, when she found out that she might have to work with Jimmy Castro again, that she just left work.  Francois Depo. at 146–48 ("So I take my stuff and leave . . . I didn't want to work with them because I was tired of their touching. I'm sick of it.").  Bernard testified that she wanted to quit after one incident, but did not because she had "bills to pay" and children to feed."  Bernard Depo. at 49–50.  Plaintiffs have also testified that several of the incidents upset or offended them.  A rational trier of fact could find that Plaintiffs  "subjectively perceived" that the incidents complained of were sufficiently severe or pervasive as to alter the terms and conditions of employment.

Defendant argues that the incidents were not objectively severe and pervasive because the conduct was not frequent, and claiming that "Morvant testified about 7 different incidents while Francois related 11 incidents that occurred over a four year period[.]"  Def Mot. at 18. Defendant is misleading in this characterization.  The Plaintiffs may have only described a limited number of types of incidents, but it is clear from a cursory look at the depositions that the Plaintiffs allege many of the same types of incidents occurred almost every day they worked. *See e.g.*, Bernard Depo. at 155–56; Francois Depo. at 67, 88; Morvant Depo. at 68.  Plaintiffs are

10

required to describe accused harassing conduct with specificity; Defendants argue that merely stating that something happens "daily" or merely saying the male employees would "touch" them is not specific enough.  Def. Mot. at 10–11, 21–22.  However, it appears, from reading the depositions, that sometimes Plaintiffs would describe certain conduct with specificity and then might later refer to that specific conduct more generically, maybe as "touching" or "grabbing." The Court does not believe it is improper for Plaintiffs to allege more specifically the details of repetitive/reoccurring conduct once or twice, and then indicate that this same conduct was repeated again and again.  The Court is satisfied that a rational fact finder could find that the incidents alleged in the depositions were frequent and pervasive.

Defendant argues that the conduct of the male employees was not severe because the incidents were not objectively offensive.  For example, Defendant argues that moving the zucchini in a sexually suggestive manner toward Plaintiff Morvant's pubic area was just joking or teasing.  Def. Mot. at 14.  However, Morvant indicated that she found the gesture offensive and was not happy.  Morvant Depo. at 86–87, 92.  Morvant testified that she had to retreat to avoid being touched by the offensive vegetable.  Morvant Depo. at 91 ("he's trying to put this vegetable inside of me, but I am backing off, so he doesn't touch me.").  Costa would also make suggestive motions with a carrot.  Morvant Depo. at 87, 100.  Employee Antonio Castro also used a zucchini in a suggestive way.  Def. Mot. at 19.  The Plaintiffs describe male employees grabbing them from behind and rubbing their genitals on Plaintiffs.  *See e.g.*, Bernard Depo. at 117–23, 155–56; Morvant Depo at 78–79; 1st Amended Compl. at 4.  Plaintiffs allege that this grabbing and bear hugging from behind was frequent.  *See e.g.*, Bernard Depo. at 155–56; Francois Depo. at 88.  Plaintiffs also indicate that some male employees would frequently push them into the walk-in cooler, turn off the lights, and touch them.  Morvant Depo. at 68–70;

Francois Depo. at 67.  Plaintiff Morvant said a male employee touched her "all over" in the walk-in cooler.  Morvant Depo. at 70.  The Court is not persuaded that these are only innocuous or inoffensive jokes.

Further, Defendant does not argue that *none* of the alleged incidents were subjectively or objectively offensive; rather, Defendant argues that "many of the acts were not subjectively or objectively offensive."  Def. Mot. at 14.  Again, the various incidents are better parsed by the jury.  Defendant also quotes from depositions of Jennifer Saintil and Dawn Drayton to show that they perceived the clash with Plaintiffs was based on culture, not sex, and that the alleged sexual harassment incidents were just pranks or jokes.  Def. Mot. at 16–18.  However, these depositions merely highlight that there are material disputes of fact about the motivations and incidents at issue.  The Court is satisfied that there is enough evidence for a rational person to find the alleged actions are objectively offensive and severe.

In arguing that the alleged incidents of sexual harassment are not severe and pervasive, Defendant itself refers to several instances of physical touching that the Court believes a reasonable person could find "severe" and "physically threatening or humiliating."  Def. Mot. at 19–20.  Defendant refers to "Jimmy Castro's hand brush[ing] [Morvant's] breast while bear-hugging her from behind."  Def. Mot. at 19.  Again, the bear hugging from behind sometimes included rubbing genitals on the Plaintiffs.  Bernard Depo. at 117–23, 155–56; Morvant Depo. at 78–79.  Also, this bear hugging from behind occurred frequently.  Bernard Depo. at 155–56; Francois Depo. at 88.  Defendant refers to another occasion where Jimmy Castro's "hand brushed the top of [Morvant's] chest when he put his arm around her shoulder."  Def. Mot. at 19.  Defendant claims that nothing indicates that either of the chest touchings was intentional, but Morvant indicated that she thought it was intentional and offensive and mentioned these

incidents in response to questions about harassing incidents and touchings.  Defendant also

mentions an incident where Jimmy Castro wrapped his arm around her shoulder and attempted to

kiss her.  Def. Mot. at 19.  Defendant mentions employee Antonio Castro touching Morvant in

the walk-in cooler.  Def. Mot. at 19.  Although Defendant argues that this touching was

accidental and due to close quarters, a rational trier of fact could also find that he intended the

touching.

Defendant mentions that Jimmy Castro touched Francois' breast.  Def. Mot. at 20.  Also,

in a more serious incident, Defendant recognizes that "Jimmy Castro's hands brushed Francois'

pelvis in the act of lifting her in the air in a bear-hug and setting her back down.  Id.  Amazingly,

Defendant argues that Francois offers no explanation for why or how this act was intended as

sexual.  Id.  Upon a review of the deposition, it is clear that Francois is alleging that Jimmy

Castro was trying to grab her pubic area.  Francois Depo. at 73.  The deposition testimony

appears as follows:

> **Q.** Okay.  Now, when his hands fell there, was it one hand or the two hands?
> **A.** His both hands.  They were like sliding there because he had lifted me up
> really high.
> **Q.** Okay.  So was he bringing you back down when that happened?
> **A.** Yes.
> **Q.** Did he attempt to curl his fingers in you pubic area?
> **A.** I just felt his hand was there and I was so upset that day.
> **Q.** But what I'm asking you is, was it clear that he was attempting to grab?
> **A.** Yes.
> **Q.** His hands were curled?
> **A.** Yes.

Francois Depo. at 73.  It is surprising that Defendant would attempt to argue that this does not

include an allegation of sexual intent.[2]  Defendant also mentions other male employees giving Plaintiffs bear-hugs.  Def. Mot. at 20.  The Court is satisfied that these actions are severe and physically threatening or humiliating.

Finally, Defendant argues that the complained of acts did not interfere with Plaintiffs ability to work.  Def. Mot. at 22–24.  Defendant bases much of its argument on the fact that Plaintiffs continued working despite the incidents and returned to work after leaves of absence.  However, the question is not whether they kept working, but whether the conduct unreasonably interferes with the employee's job performance.  Olson, 130 Fed. Appx. at 388.  In this case, Plaintiffs have testified about being upset and having a hard time concentrating at work.  Bernard testified that she wanted to quit after one incident, but did not because she had "bills to pay" and children to feed."  Bernard Depo. at 49–50.  Francois testified that at one time she was so upset, when she found out that she might have to work with Jimmy Castro again, that she just left work.  Francois Depo. at 146–48.  The Court finds that a rational trier of fact could also find Plaintiffs were hindered in their job performance, while they were working, by being offensively grabbed from behind, touched, and pushed into the walk-in cooler to be touched.

The Court is satisfied that Plaintiffs have sufficiently alleged that at least some of the incidents complained of were frequent, and all incidents taken as a whole were sufficiently frequent and pervasive.  The Court is also satisfied that many of the incidents were severe and physically threatening or humiliating.  The Court is further satisfied that a reasonable fact finder could find that the incidents unreasonably interfered with the Plaintiffs job performance.

---

[2]It is even more surprising that Defendant would spend so much effort in its Reply and Motion to Strike Affidavits (DE # 46) ranting about how the Plaintiffs' Response and affidavits were inappropriate because Francois, in her deposition, had never alleged that anyone grabbed her vagina.  It is enough that she alleged that Jimmy Castro grabbed her pubic area.  That she did not use the word "vagina" makes no difference.

Overall, the Court finds that there are genuine issues of material fact and summary judgment is not appropriate under the circumstances.

**IV.     Conclusion**

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Washmonbo, Inc. d/b/a Front Porch Café's Motion for Summary Judgment (DE # 35) is DENIED.  It is further

ORDERED AND ADJUDGED that Defendant Washmonbo, Inc. d/b/a Front Porch Café's Motion to Strike Plaintiffs' Affidavits in Opposition to Summary Judgment (DE # 46) is DENIED AS MOOT.  Even without considering the affidavits, the Court holds Defendant has not sufficiently shown that there are no genuine disputes as to material facts.

DONE AND ORDERED in Chambers at Miami, Florida, this  9th day of May, 2007.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record